## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **JERRY BAILEY** | * | |
| 2948 Siwanoy Drive | * | |
| Edgewood, MD, 21040 | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | |
| **CENTENNIAL PROTECTION GROUP, LLC** | * | Case No.: _____ |
| 2300 York Road, Suite 206 | * | |
| Timonium MD 21093 | * | |
| | * | |
| Serve on: Resident Agent: | * | |
| Lemonia A. Hopp | * | |
| 2300 York Road, Suite 206 | * | |
| Timonium, Maryland 21093 | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT & JURY DEMAND

**NOW COMES**, plaintiff Jerry Bailey, by and through his undersigned attorneys George A. Rose, Esquire, and Rose Law Firm, LLC, and sues the Centennial Protection Group, LLC for employment discrimination, and in support of his cause of action state to this Honorable Court:

### I.      PRELIMINARY STATEMENT

1.      This is action for declaratory, injunctive, monetary and other appropriate relief against the Centennial Protection Group, LLC. The plaintiff, Mr. Jerry Bailey, seeks to redress intentional violations by defendant of rights secured to him by the laws of the United States and the State of Maryland.  This action arises for illegal employment race discrimination pursuant to Title VII of Civil Rights Act of *1964* § 7, 42 U.S.C. § 2000e et seq. (*1964*). ("Title VII"), and the Civil Rights Act of 1866 ("Section 1981"), as amended, 42 U.S.C.§ 1981.

1

## II.      PARTIES

2.      At all times relevant hereto, plaintiff Mr. Jerry Bailey (hereinafter "Plaintiff" or "Mr. Bailey") is a Black American individual residing at 2948 Siwanoy Drive Edgewood, MD, 21040, Mr. Bailey has been a resident of the State of Maryland for his entire life.

3.      Defendant Centennial Protection Group, LLC (hereinafter "Defendant CPG") is a limited liability company that is registered under the laws of the State of Maryland. Defendant has its principal place of business in Baltimore County in the State of Maryland. Defendant may be served with process by serving its registered agent, at 2300 York Road, Suite 206 Timonium MD 21093. Defendant is now and at all times pertinent hereto a private security protection or security service provider. At all times pertinent hereto, Defendant CPG, employed Plaintiff as a courtesy patrol officer ("CPO").

## III.      JURISDICTION

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 1132(e), all of which provide for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

5.      This Court has jurisdiction over Mr. Bailey's claims under the statutory laws of the State of Maryland pursuant to this Court's supplemental jurisdiction as codified at 28 U.S.C. § 1367.

## IV.      VENUE

6.      Venue is proper in this district under 28 U.S.C. *§1391(a)(2),* and *§1391(b)(2)* because Defendant CPGs is located in this district and the events or omissions giving rise to this claim occurred in this district.  Also, venue is proper in this district because the alleged unlawful

employment practices were committed in this district, the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district.

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      On or about September 7, 2017, Mr. Bailey filed a Charge of Discrimination against the Defendant CPG, with the U.S. Equal Employment Opportunity Commission (EEOC) Charge No.: 531-2017-02491.   On or about June 8, 2018 the EEOC issued Mr. Bailey a Right To Sue Letter.  Mr. Bailey files this lawsuit within the ninety (90) days since Mr. Bailey received the Right to Sue Letter.  Mr. Bailey has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

## VI.     FACTUAL ALLEGATIONS PERTINENT TO ALL COUNTS

8.      In December 2015, CPG employed Plaintiff as a Courtesy Protection Officer (CPO). As a CPO, Defendant assigned Plaintiff to work as a licensed armed security guard on residential properties in Essex and/or Glen Burnie, Maryland.  CPG provides security services to these residential properties under contract with, Henderson Webb, Inc., a property management company.  Since May 17, 2017, Plaintiff's employment effectively ended with CPG after Plaintiff suffered an on the job injury and have been out from work, on workers' compensation leave.

9.      During Mr. Bailey's employment with CPG, Plaintiff was subjected to discriminatory terms, benefits and conditions in Mr. Bailey's employment due to Mr. Bailey's Race and Color as a Black American. When Plaintiff began his employment in December 2015 with CPG, Plaintiff worked with White American CPOs Donahue, Clyde and Lewis. All these White American CPOs were given pay raises and other benefits throughout their employment with CPG, but Plaintiff and other Black American CPOs, were not given or offered raises or benefits.

As of May 2017, all the CPOs were Black Americans, except for one White American, who was a recent CPO hire, and who is paid a higher rate of pay than any of the Black American CPOs.

10.     Sometime in December 2016, Plaintiff had a performance evaluation by Sergeant Donohue. Mr. Bailey performance was rated "beyond satisfactory".  Plaintiff was not given a raise for the "beyond satisfactory" performance rating. A couple months after the performance evaluation, Mr. Donohue told Mr. Bailey that if Plaintiff added Sundays to Mr. Bailey's work schedule Plaintiff would get a pay raise.  None of the White American CPOs had to add Sundays to their schedule to receive their pay raise for satisfactory work performance.

11.     After Plaintiff's 2016 "beyond satisfactory" performance rating, Plaintiff began asking CPG's president, Mr. Dave Hopp for a promotion to join and work on CPG's executive protection team. This came with a higher pay and coveted security assignments. At the time, only White America security officers worked on CPG's executive protection team. Each time Plaintiff's requested to join the executive protection team Mr. Hopp ignored Plaintiff.

12.     On March 21, 2017, Mr. Dave Hopp held a meeting with the CPOs. At the meeting Mr. Hopp commended the CPOs for doing good security work for CPG, in terms of reports, walking detail, and contact with the residents. During the meeting, Plaintiff asked Mr. Hopp about a raise for the good security work the CPOs were doing. In response, Mr. Hopp stated: I buy y 'all chicken, don't I? Y 'all should be happy with that." Plaintiff took Mr. Hopp's remarks as racially derogatory and was embarrassed and humiliated by the comment.

13.     Sometime in April 2017, after sergeant Donahue's sergeant position became vacant, Plaintiff inquired about applying for the position and the rate of pay and benefits that came with the position.  Mr. Hopp told Plaintiff that the position only came with a One Dollar ($1.00) per hour pay increase, from the current $15.00 per hour Plaintiff was earning, and no benefits such

as paid vacation, medical insurance or leave. However, Sergeant Donahue was given one or more of these benefits, and a much higher rate of pay.

14.     During Mr. Bailey employment, Plaintiff and other Black American CPOs were subjected to racial slurs, stereotyping and ridicules by White American supervisor sergeant Lavagan. For example, sergeant Lavagan would often mockingly ask why black people have big noses. One day, sergeant Lavagan and Plaintiff was on routine patrol when they received a call about "three black males". Sergeant Lavagan immediately referred to the individuals, who were residents on the property, as "animals". Plaintiff was extremely offended and humiliated by the remark. Plaintiff immediately contacted their supervisor and reported the matter. Shortly thereafter, Plaintiff received a call from Mr. Hopp who told him to "stick it out." Plaintiff had to continue working with Mr. Lavagan for months and endure his racist remarks.

15.     On several occasions during Plaintiff's employment, Plaintiff was given illegal discriminatory assignments based on racial stereotyping and profiling of Black Americans residents or visitors on the property.  These includes being directed to call the police on innocent Black American residents or visitors and issuing citations or trespassing violations against Black American residents or visitors who did not break any property rules or commit a lease violation. Plaintiff was directed not to allow Black Americans to stand in front of the buildings, to restrict Black American residents and visitors who were in the common areas of the property to the sides of the buildings, restrict them to the back of the buildings and told that they are not allowed anywhere outside the buildings, not even to utilize the views and amenities of the common areas.

16.     One directive Plaintiff and other Black American CPOs received from Mr. Hopp was to immediately issue trespassing citations to any group of black males observed standing around anywhere on the property, regardless if they did not commit a violation or break any rules

or regulations on the property. Mr. Hopp would direct Plaintiff and other Black American CPOs to target and harass Black American residents or visitors who were on the property outside a building.   On some occasions, Plaintiff was also directed and instructed by Henderson Webb agents or employees to target Black American residents and visitors, while White American residents and visitors were allowed free unrestricted and uninterrupted access on the property.

17.     These improper assignments and actions often lead to innocent Black American residents or tenants getting escorted off the property or on being placed on a trespass list.   Also, some residents and visitors get put out of their apartments and or get arrested due to the illegal assignments.

18.     Plaintiff and other Black American CPOs were threatened with immediate firing if they did not perform the unlawful assignments.  It was extremely depressing, heartbreaking and humiliating for Plaintiff, being a Black American, to carry out these unlawful assignments targeting Black Americans. Also, enforcing these assignments created great risk and anxiety for Plaintiff and other CPOs, because residents and visitors often protests and become confrontational whenever they are approached and harassed by CPOs.

## VII.   COUNT ONE
**(Disparate Treatment Race Discrimination In Pay, Benefits & Promotion
in Violation of Title VII & Section 1981)**

19.     Mr. Bailey incorporates all preceding and following paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto the Plaintiff was subjected to disparate treatment race discrimination in terms and benefits of his employment.

20.     Defendant intentionally, with malice and reckless indifference to federal, state and local laws prohibiting race discrimination in employment, directly discriminated against Plaintiff and treated Plaintiff less favorably than White American CPOs.

6

21.     Plaintiff reasonably believes the actions of Defendant to: (1) pay White American CPOs a higher rate of pay than Black American CPOs who are no less experience or qualified; (2) provide paid leave and other benefits to White American CPOs and not to Black American CPOs, and (3) deny Plaintiff a raise of Pay after Plaintiff's 2016 "beyond satisfactory" performance rating; (4) require Plaintiff to work on Sundays in order to get a raise; (5) denying Plaintiff promotion to the executive protection team; (6) denying Plaintiff the rate of pay and benefits offered to White American Sergeant Donahue for the sergeant position; and, (7) Mr. Hopp instruction to Plaintiff to "stick it out" and endure months of Sergeant Lavagan's racist remarks about Black Americans, are discriminatory preferential treatment base on race.

22.     Defendant had actual and/or constructive knowledge of the racially motivated disparate treatment against Plaintiff, and not only failed to take prompt and adequate remedial action, but instead, participated in the racially motivated discriminatory disparate treatment of Plaintiff.

23.     As a direct, foreseeable, and proximate result of Defendant's unlawful actions, and specifically Defendant's racially motivated discriminatory disparate treatment, Plaintiff has suffered, loss of income, denial of promotion, anxiety, emotional distress, humiliation, shame, and embarrassment.

### VIII.   COUNT TWO
**(Discriminatory Work Assignments in Violation of Title VII & Section 1981)**

24.     Mr. Bailey incorporates all preceding and following paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto the Plaintiff was subjected to discriminatory work assignments.

25.     The Defendant intentionally, with malice and reckless indifference to federal, state, and local laws prohibiting racial discrimination in employment, directed and assigned Plaintiff to

perform job duties that targeted Black American residents and visitors on the residential property where CPS assigned Plaintiff to patrol, based on stereotyping and profiling of the Black American residents and visitors.

26. Plaintiff reasonably believes the directives and assignment from Defendant to: (1) target any group of Black American outside on the property with a trespassing or other violation ; (2) restrict Black American residents or visitor to the back or inside of the buildings; and, (3) to call the police on innocent Black American residents or visitors, were racially biased discriminatory work assignments.

27. The racial biased discriminatory assignments and directives was pervasive and regular and detrimentally affected the terms, conditions, and privileges of Plaintiff's employment.

28. As a direct and proximate result of the discriminatory directive and assignments, the Plaintiff suffered injury to his reputation, injury to his career, anxiety, mental anguish, and humiliation; and, faces irreparable harm and future losses.

## IX. COUNT THREE
### (Racial Harassment in Violation of Title VII & Section 1981)

29. Mr. Bailey incorporates all preceding and following paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto the Plaintiff was subjected to intentional harassment because of racial animosity against Black Americans.

30. The Defendant intentionally, with malice and reckless indifference to federal, state, and local laws prohibiting racial discrimination in employment, directed Plaintiff to: (1) target any group of Black Americans outside on the property with a trespassing or other violation; (2) restrict Black American residents or visitor to the back or inside of the buildings; (3) call the police on innocent Black American residents or visitors; and, "stick it out" and endure months of Sergeant Lavagan's racist remarks about Black Americans  were racially biased discriminatory work assignments. Additionally, in response to Plaintiff's request for a raised of pay, Mr. Hopp made a

racially derogatory remark about buying "You all chicken".  Plaintiff reasonably believes these actions to be racial harassment.

31.     The racial harassment was pervasive and regular and detrimentally affected  the terms, conditions, and privileges of Plaintiff's employment.

32.     Defendant had actual and/or constructive knowledge about the racially inspired harassment not only failed to take prompt and adequate remedial action, but also participated in the harassment.

33.     As a direct and proximate result of this racial discrimination and harassment, the Plaintiff has suffered the loss income, injury to his reputation, injury to his career, anxiety, mental anguish, and humiliation; and, faces irreparable harm and future losses.

## X.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Mr. Bailey prays that this court enter judgment in Mr. Bailey's favor and grant Mr. Bailey the maximum relief allowed by law, including, but not limited to:

(a)  compensatory damages of Five Hundred Thousand Dollars ($500,000.00);

(b)  back pay and front pay;

(c)  a declaration that Defendant CPGs' actions violated Title VII, and Section 1981;

(d)  attorney's fees, and costs;

(e)  both pre-judgment and post-judgment interest; and,

(f)   any such other relief as are just and equitable under the circumstances.

## XI.    JURY DEMAND

Mr. Bailey requests a trial by jury on all issues and counts stated herein.


Respectfully Submitted,

By:

*/s/ George Rose*

_____
George A. Rose, Esquire
Federal Bar Number: 26086
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, MD  21202
Telephone: 410-727-7555
Facsimile: 443-320-0962
Email: grose@roselawfirm.net

Attorneys for *Plaintiff Jerry Bailey*